DELILAH F. IRION et al. *v.* MILTON F. HUME, Assignee, etc.

1. ATTACHMENT — CLAIMANT'S BOND — ISSUE THEREON. — In an issue on a claimant's bond, the burden of proof is on the plaintiff. It is not necessary that he should show title to the property in himself. He will succeed by showing title in a stranger, as thereby he demonstrates that the property is not liable to the creditors' demand. Thornhill v. Gilmer, 4 S. & M., 153.

2. SAME — WHEN OBLIGOR RELEASED — RULE AT COMMON LAW. — At common law, when the condition of the bond is possible at the time of making it and before the same can be performed, becomes impossible by the act of God, or of the law or the obligee, then the obligation is saved. If the condition is impossible at the time of making the bond, the condition is lost and the bond becomes absolute.

3. SAME — PLEA OF PUIS DARREIN CONTINUANCE. — The rule is well established, that whatever new matter has arisen in point of time, since the last continuance, which would defeat the plaintiff's action, must be taken advantage of by this plea. It serves to present some new fact not in existence at the date of the original pleading.

4. SAME — EMANCIPATION. — The emancipation of slaves was by a law declaring slavery to have been abolished, etc. The courts must take cognizance of law judicially, and it does not require averment to bring it to their notice.

5. SAME — CASE IN JUDGMENT. — S. D. & Co., in 1861, levied an attachment upon certain slaves, supposed to belong to S. I. and W. I. The wives of each preferred a claim to a portion of the slaves levied upon, and gave the claimant's bond. In 1861, the attaching creditors tendered an issue which was joined in 1866 by D. I., one of the claimants; upon the trial, the jury found for the plaintiffs, but failed to assess the value of the property attached: *Held,* that it was error in awarding a judgment for the value of the slaves as assessed by the sheriff in his return upon the attachment, and that as there was no property subject to the plaintiff's debt, there could rightfully be no assessment of value, nor could there be judgment for the sum so determined.

ERROR to the Circuit Court of Alcorn County. Hon. B. B. BOONE, Judge.

Scruggs, Donegan, & Co. brought suit, by attachment, against Thomas Irion and W. M. Irion, for $52,370.78, in the circuit court of Tishemingo county, on the 12th day of March, 1861, alleging, as a ground for the issuance of the attachment, that the debtors had assigned and disposed of their property, or were about to do so, with intent to defraud their creditors, or give an unfair preference to some of them. Bond was executed according to law, and the attachment issued was, on the 16th March, 1861, and the 18th March, 1861, levied on thirty-seven slaves, valued at $30,800. Another writ issued in this case was, on the 20th March, 1861, levied on five slaves, two horses, one rockaway, one buggy, quarter section of land on which W. M. Irion resided, and a house and lot, in which W. G. Campbell resided, but no value was fixed to this last named property attached. On the 23d September, 1861, the writ was served on W. M. Irion and Thomas Irion. A declaration with numerous counts, accompanied by a long bill of particulars, was filed to the September term, 1861, of the circuit court.

On the 23d March, 1861, Delilah Irion gave bond and propounded a claim to part of the property attached. The penalty of the bond was $13,000. Mary M. Irion also gave bond in the penalty of $22,000, and propounded her claim to the balance of the property attached.

At the September term, 1861, issue was tendered by the plaintiff and joined by claimant at the September term, 1866, of the circuit court of Tishemingo county. The death of some of the plaintiffs was suggested, and suit continued in the name of John W. Scruggs, as surviving partner, and subsequently his bankruptcy was proven, and the suit revived in the name of C. H. Donegan, assignee, and he dying, the case was revived in the name of Milton Hume, assignee.

The suit was afterwards removed to Alcorn county, and the verdict and judgment are in these words:

"This day came the parties, by their attorneys, and thereupon came a jury of good and lawful men, to wit: J. W. Cansey and eleven others, who, being elected, impaneled, charged and sworn well and truly to try the issue joined between the parties and the trial of the right of property, upon their oaths do say, that they find the issue for the plaintiff in the attachment, and the jury having failed to find the value of the property, and the plaintiff, by his counsel, came into court and elected to take the value of the property assessed by the sheriff, who levied the attachment without resorting to a writ of inquiry.  It further appearing to the court that the negro slaves in the pleadings mentioned, to wit, Mary, Monroe, Francis, Jack, Lucy, Juba, Joe, Polly, Stephen, Hannah, Lizzie, negro child with unknown name, and Cale, were, at the time of the levy of said attachment, slaves, and liable to the levy of said attachment, and that by reason of the freedom of said slaves the same cannot be delivered to the sheriff.  It is, therefore, considered by the court that the plaintiff recover of said defendants the sum of six thousand five hundred dollars, the value of said property assessed by the sheriff, together with the costs in this cause expended, for which execution may issue."

From which judgment a writ of error was prosecuted, and the following assigned as error:

1. A judgment could not be rendered in this case in favor of Milton F. Hume, assignee of J. W. Scruggs, said suit having never been revived in his name.  The judgment was for the value of the negro slaves levied on by the original attachment as assessed by the officer who levied the attachment in the aggregate, and not for the damages for the detention of the property.

2. The jury did not assess the value of each negro slave levied on, separately, as required by the statute.

3. The negro slaves levied upon were emancipated by act of the Government of the United States of America, and the sure-

ties on the replevin bond were thereby exonerated, and no judgment could be rendered on said bond for the value of said negroes.

4. No judgment could be rendered for the value of the slaves levied on by the attachment, they having been set free by the general government before the judgment was rendered in this case.

5. The court erred in overruling the motion of appellants in the court below to set aside the verdict of the jury in this case and grant a new trial, for the causes assigned in said motion.

*Inge & Beene*, for plaintiffs in error, contended :

1. That at the time the claimant interposed her claim, she entered into bond to prosecute her claim to effect, and in case of failure, she would pay to plaintiffs such damage as would be awarded against her, and that she would deliver the same property to the sheriff, etc.   Code of 1857, p. 532.   At the time she entered into the contract, it was legal and proper, but by subsequent acts of the general government and the state, it became illegal and improper, and therefore avoids the promise.   41 Miss., 328 ; 44 Miss., 268.

2. That at the time of the trial the title to the property was in no one.   The slaves were free, and no judgment could be legally rendered for them or their value.   44 Miss., 272.   That in this case the jury did not assess the value of the slaves, and therefore no judgment could be rendered for their value independent of emancipation.   Young v. Pickens et al., 45 Miss., 555.

3. That the surety on a bond given by a defendant in attachment to replevy slaves is not liable for the value of the slaves after they are emancipated by lawful authority.   44 Miss., 254 ; 45 Miss., 553.   That in this case there was no proof of damage on account of detention, and no judgment could be rendered for the detention.

4. That the judgment being joint against the claimant and her sureties for the value of the slaves as assessed by the sheriff, must be reversed as to all.   44 Miss., 254; Tanner v. Battaile, MSS. opinion, 1871 ; 44 Miss., 555.

5. That as courts are bound to take judicial notice of law, it was not necessary to plead the emancipation of the slaves specially. Young v. Pickens et al., 45 Miss., 555.

6. That the suit was never revived in the name of Hume, assignee, etc., the party in whose favor the judgment is rendered, nor is there anything in the record of the case showing that he has any interest in, or in any manner connected with it, and for this reason, the judgment is a nullity.

*H. H. Chalmers*, on same side, filed an elaborate brief covering the same grounds as made in the brief of associate counsels, and insisted that it was not necessary to plead specially the emancipation of the slaves. That the court must judicially take notice of such a public act. That a plea of *puis darrein* continuance is only necessary to set up some fact *dehors* the record, which has occurred since the last continuance, and this fact must be of a *private* and not of a *public* character. Public acts never require to be specially pleaded.

2. That in no case in this state in which the court held judgments for the value of negroes to be erroneous was there any plea of *puis darrein* continuance. Bradford v. Jenkins, 41 Miss., 328; Whitfield v. Whitfield, 44 ib., 267; Young v. Pickens et al., 45 ib., 553.

*W. F. Dowd*, for defendant in error, contended:

1. That the claimant having failed to make up the issue until after the return term, and after plaintiff's motion for judgment by default, he thereby abandoned and forfeited his claim to the property. Martin v. Lofland, 10 S. & M., 317. This judgment by default is conclusive against the claimant. Shirley v. Fearne, 33 Miss., 653; Sears v. Gunter, 39 Miss., 338. That the court below only rendered such judgment at the September term, 1873, as it should have rendered at the September term, 1866, and it should therefore be affirmed. Code 1857, p. 381.

2. That the emancipation of the slaves, as avoiding the bond and discharging the sureties, was raised for the first time by a mo-

tion for a new trial. That this should have been pleaded *puis dareïn continuance*, and it was too late to make the objection. Brown v. Brown, 13 Ala., 208; 44 Miss., 266; Clangleton v. Black, 24 Miss., 185; 11 S. & M., 361; Price v. Sinclair, 5 S. & M., 258. Pool v. Hill, 44 Miss., 310. Stafford v. Woodruff, 2 S. & M., 191; Nicholl v. Mason, 21 Wend., 339; Pool v. Hill, 44 Miss., 311; Cole v. Harmon, 8 S. & M., 562; M. C. R. R. v. Miller, 40 Miss., 45; Dunlap v. Hearne, 37 Miss., 471; Atwood v. Meredith, 37 Miss., 635; Phipps v. Ingraham, 41 Miss., 256; Leach v. Blow, 8 S. & M., 221.

3. That this court cannot review or decide any point not made in the court below, nor can a party obtain a new trial for errors in the rulings of the court or finding of the jury, when the points were not presented on the trial by either the pleadings, proofs or charges. Satterwhite v. Littlefield, 13 S. & M., 302; Binns v. Stokes, 27 Miss., 239; Penrice v. Wallis, 37 Miss., 172; McComb v. Turner, 14 S. & M., 119; House v. Fultz, 13 S. & M., 39; Ferguson v. Applethwaite, 10 S. & M., 304; Parr v. Gibbons, 27 Miss., 375; Learned v. Matthews, 40 Miss., 210; Fox v. Matthews, 33 Miss., 433; Doe v. Natchez Ins. Co., 8 S. & M., 197; Cond. B. Man. v. Martin, 9 S. & M., 613; Monk v. Horne, 38 Miss., 100; Grant v. Planters' Bank, 4 How., 326.

4. That the freedom of the slaves did not release the obligations of the makers of the bond, for the trial of the right of property. That by the conditions of the bond the claimant is clearly made liable for the damages that may be awarded against him, if he fail in the suit. That when the slaves were levied on in March, 1861, they were liable to the attachment, and in the custody of the sheriff. That the claimant wrongfully interposed her claim, took them from the officer and kept them until they were free. She failed in her suit, and the damages should be the value of the property at the time of the levy, because she prevented the plaintiff from making his money by the sale of the property. Thomas v. Degrafenreed, 17 Ala., 606; McGraw v. Hart, 1 Porter, 175;

Planters' Bank v. Willis, 5 Ala., 770; Langdon v. Brumley, 7 Ala., 53; Dawson et al. v. Shipman, 6 Ala., 27; White v. Ross, 5 Stew. & Port., 133; Cole v. Connelly, 16 Ala., 273; Phelan v. Fincher, 5 Ala., 448. Whitfield v. Whitfield, 44 Miss., 264; Young v. Pickens et al., 45 Miss., 553; Notte v. White, 26 Miss., 26; Browning v. Henford, 5 Hill (N. Y.), 588; Story on Bailments, §§ 130, 132; Code of 1857, p. 532, art. 295.

SIMRALL, J., delivered the opinion of the court.

Scruggs, Donegan & Co. brought an attachment suit against Thomas and William Irion for $52,370 78, in March, 1861. The attachment in the same month was levied upon sundry slaves and other property. On the 23d of March, 1851, Delilah Irion preferred a claim to part of the slaves, and executed the claimant's bond in the penal sum of $13,000. Mary M. Irion also claimed another portion of the slaves, and gave bond in the penalty of $22,000.

At the September term, 1861, the attaching creditor tendered an issue, which was joined, in 1866, by Delilah F. Irion. By the casualties of death, and bankruptcy, the original plaintiffs, Scruggs, Donegan & Co., came to be represented by Milton T. Hume, assignee in bankrupty of Scruggs, survivor, of the members of his firm.

On the trial, the jury found the issue for the plaintiff, in the attachment, but omitted to assess the value of the property. The plaintiff's counsel, as the record recites, elected to take the value of the property, assessed by the sheriff, at the time of the levy of the attachment, and thereupon the court rendered judgment for $6,500, the aggregate of such value, reciting as a reason for such judgment, that the slaves, since they were levied upon, have become free, and cannot be delivered to the sheriff.

The main question argued by counsel, and urged as grounds for reversal of the judgment is, that the circuit court erred in rendering judgment for the value of the slaves, they having

ceased to be the subject of property after the claim of Mrs. Irion was propounded and before the trial was had. Art. 299, Code 1857, p. 533, directs, if the verdict shall be for the plaintiff, judgment shall be awarded, as in *detinue*, against the claimant and the sureties in his bond, for the value of the property. The condition of the bond is, " for the prosecution of such claim with effect, or in case of failure therein    *    *    *    that he will well and truly deliver the same property to the sheriff    *    *    *    if the claim thereto shall be determined against him." Art. 295, p. 532. The burden of proof shall be on the plaintiff, and the issue shall be governed by the rules which govern the trial of an issue in the action of ejectment. Art. 298.

The precise issue, of which the execution or attachment holds the affirmative, is that the property is liable to the process, and not whether the claimant has established his title. Although the claimant may not have title, yet he will succeed by showing title in a stranger, for, thereby, he has demonstrated that the property cannot be rightfully subjected to the creditor's demand. Ross v. Garey, 7 How., 47 ; Thornhill v. Gilmer, 4 S. & M., 153.

But the argument is pressed with earnesness and plausibility, that but for the interposition of Mrs. Irion's claim and bond, the slaves would have been sold, and her resposibility is to be measured by the condition of things, as at the time she replevied the slaves from the sheriff. And whatever changes may have subsequently occurred do not exonerate her.

In Edson v. Weston, 7 Cow., 280, the principle was ruled, that the bailee of chattels is excused for not returning them if he has been deprived of possession by paramount authority ; so is Shelbey v. Scotsford, Yel., 23.

The principle of the common law, stated in the language of Lord Coke, in 1 Ins., 206, a. b., is, that where the condition of a bond    *    *    *    is possible at the time of making it, and before the same can be performed becomes impossible by the act of God or of the law, or the oblïgee, then the obligation is saved ; as if

the recognizance or bond be to appear at the next term of a court, and before the day the obligor dies, then the obligation is saved.

But as put by Blackstone, 2 Com., 341, if the condition is impossible at the time of making the bond, the condition is gone and the bond becomes absolute.

So, where a party agrees to do a particular thing which is lawful at the time, and the legislature comes in and makes it unlawful, here the law absolves from the obligation, as sometimes expressed, " repeals the covenant." Bradford v. Jenkins, 41 Miss., 334.

It was lawful for Mrs. Irion and her sureties, at the time the bond was executed, to covenant, in the event of failure to prosecute her claim with effect, " to deliver the slaves to the sheriff." And it was also possible to have saved the obligation. But while her right was undetermined, and before an adjudication upon it, paramount, public sovereign authority intervened, and, by the emancipation of the slaves, rendered it impossible and illegal to perform the covenant. Her principal obligation was to redeliver the slaves to the sheriff if the court should determine they were liable to the plaintiff's debt. The court could not so adjudge, because by law they had ceased to be property. If, as the authorities hold, she had been deprived of possession, and of the ability to return, by the sentence of the law vindicating a paramount title in some other person, she would have been excused. Very plainly, she is absolved from that duty by the destruction of the status of slavery and the enfranchisement of the servile race.

But it is insisted by counsel, that, while it is true the slaves are free, nevertheless the plaintiff was entitled to his judgment, for the alternate value. The judgment directed by the statute is, as in detinue, for the specific property if to be had; if not, then the value. The statute adheres to the import of the obligation — that is, primarily, a return of the property to the sheriff; and, inasmuch as the officer has assessed the value, there can be no enforcement of the pecuniary judgment, except upon a failure to get the property.

But it has also been urged, that if it were conceded that emancipation, subsequent to the claim made by Mrs. Irion, might be successfully set up, it should have been by plea *puis darrein* continuance.

The rule is well settled, that whatever new matter has arisen in point of time, since the last continuance, which would discharge or defeat the plaintiff's action, must be thus specially pleaded. Bethea v. McLennon, 1 Iredell, 524, is an apt illustration of the rule. As where the defendant in detinue has been deprived of the property, since the last continuance, by a recovery in due course of law. In quite all the cases that we have examined, the plea served to present some new and recent fact not in existence at the date of the original pleading.

But while emancipation is a fact, yet it was produced by a law declaring slavery to have been abolished, and that it shall not thereafter exist. The courts must take cognizance of law, judicially, and it does not require averment to bring it to their notice.

This question has been disposed of by authority, adverse to the position of the defendant in error. Whitfield v. Whitfield, 44 Miss., 270, et sequiter; Young v. Pickens, 45 ib., 556; Tanner v. Battaile, MSS. opinion, 1871.

If the attachment creditor could not take judgment for the slaves as property, he could not recover for their value.

The jury found for the plaintiff in attachment, but made no assessment of value. The provision of the statute allowing the valuation of the sheriff to be accepted as the ascertainment of value when the jury fails to fix it, cannot avail the plaintiff. For if there was no property subject to the plaintiff's debt, there could be rightfully no assessment of value, nor could there be judgment for the sum so determined.

There was error, therefore, in awarding judgment for the value of the slaves, as assessed by the sheriff, in his return upon the attachment.

Judgment reversed; and judgment in this court on the verdict for the claimant.